IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID McGUIRE, | ) | CASE NO. 1:20-CV-00415-BMB |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET M. BRENNAN |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| LYNEAL WAINWRIGHT, Warden, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

**I.   Introduction**

Petitioner, David McGuire, seeks a writ of habeas corpus under 28 U.S.C. § 2254. McGuire is an Ohio prisoner who is currently serving life imprisonment with the possibility for parole after 25 years, a consecutive prison term of three years, and a concurrent prison term of thirty months, for convictions of aggravated murder, murder, felonious assault, and having a weapon while under disability. McGuire asserts one ground for relief. (ECF No. 1). Respondent, Warden Lyneal Wainwright, filed the return of writ on July 10, 2020. (ECF No. 7). McGuire filed his traverse on August 10, 2020. (ECF No. 9).

This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on McGuire's petition and other case-dispositive motions. Because McGuire's sole ground for relief is meritless, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

1

## II. Relevant Factual Background

The Ohio Court of Appeals for the Eighth Appellate District set forth the following facts[1] on direct appeal:

> {¶2} On March 16, 2016, between 7:00 p.m. and 8:00 p.m., McGuire and his cousin Mac McGuire ("Mac") were arguing outside of McGuire's home at 1237 East 146th Street in East Cleveland.
>
> {¶3} Mac was sitting in the passenger seat of a car that was backed into the driveway with the door open. McGuire went upstairs to his third-floor apartment, retrieved a gun, returned to the driveway and fired four shots into Mac's legs and groin.
>
> {¶4} Sultan Muhammad, who was renting the second-floor apartment from McGuire, witnessed the incident from a second-floor window and instructed his girlfriend, Kristen Angel, to call 911. Angel did so, and two East Cleveland police officers responded to the scene, but not before McGuire fled the scene. Medical personnel also responded to the scene and transported Mac to the hospital, where he died as a result of gunshot wounds.
>
> {¶5} Responding officer Kenneth Bolton secured the scene, and Officer Elshawn Williams spoke to Muhammad, Angel, and a neighbor who had heard gunshots and saw McGuire standing near the car with his hands on his head several minutes later.
>
> {¶6} McGuire was arrested on March 28, 2016. On April 12, 2016, a Cuyahoga County grand jury indicted McGuire on Count 1, aggravated murder in violation of R.C. 2903.01(A); Count 2, murder in violation of R.C. 2903.02(B); Count 3, felonious assault in violation of R.C. 2903.11(A)(1); and Count 4, having weapons while under disability in violation of R.C. 2923.13(A)(3). Counts 1 through 3 each carried one-year and three-year firearm specifications pursuant to R.C. 2941.141(A) and 2941.145(A).

### A. Trial

1. Testimony Regarding a Body Camera.

---

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

2

{¶7} McGuire pleaded not guilty to all four counts. A jury trial began on March 28, 2017. During the trial, it became apparent during the defense's cross-examination of Officer Williams, one of the responding officers, that he had been wearing a body camera at the time he responded to the incident.

{¶8} Upon learning this information, McGuire's counsel discussed making an oral motion for mistrial based on two alleged *Brady* violations by the state. The court noted that a complete record on the issue of body camera evidence had not been developed, and it declined to consider such a motion at that time.

2. Oral Motion for Mistrial.

{¶9} At a later point in trial, defense counsel discovered that Officer Bolton, the responding officer who was the first to arrive at the scene, was being investigated for a separate incident involving misconduct during a traffic stop. Upon discovering this, defense counsel made an oral motion for mistrial, based on both the body camera evidence and the investigation into Officer Bolton. First, McGuire asserted that the state violated his rights by failing to turn over any information regarding an unrelated investigation into Officer Bolton. The East Cleveland Police Department terminated Officer Bolton, and he was subsequently — after the trial in this case — indicted and pleaded guilty to gross sexual imposition and interfering with civil rights. Second, McGuire asserted that the state violated his rights by failing to turn over any body camera evidence related to this incident. While there was uncontroverted testimony that the responding officers, including Bolton, were wearing body cameras when they responded to the crime scene, the state did not turn over any of the body camera footage, and the record reveals that the East Cleveland Police Department either lost or destroyed any body camera evidence that had existed.

3. Trial Court Denied Defendant's Motion.

{¶10} The trial court denied this motion as it related to evidence regarding the investigation into Officer Bolton's misconduct but imposed a sanction in the form of allowing defense counsel wide latitude in its cross-examination of Detective Harvey, the lead detective on this case. When it denied this motion, the court stated again that it was declining to decide anything related to the body camera evidence because at that point, there was still not a fully developed record as to the potential existence of this evidence.

{¶11} At a later point in trial, defense counsel informed the court that after discussing the matter at length with McGuire, they would not be making another oral motion for mistrial based on the state's failure to turn over body camera evidence. Instead, defense counsel moved for a sanction for the discovery violation in the form of an additional jury instruction, asking the court to instruct the jury that they may infer from the state's failure to preserve body camera evidence that the evidence was relevant to the case and favorable to McGuire.

4. Jury Instruction.

{¶12} Ultimately, the court instructed the jury on the issue as follows: You have also heard evidence that two East Cleveland Police officers who arrived first at the crime scene used body worn cameras. The East Cleveland Police Department was required to preserve the images and audio from those cameras. The State Ohio was obligated to provide all of those recordings to counsel for the defendant. Those obligations were not met. You may consider these failures and draw any reasonable inference from them when deciding whether the State of Ohio has proved the charges beyond a reasonable doubt.

5. Guilty Verdict.

{¶13} Following deliberations, the jury returned a verdict of guilty on all counts and corresponding specifications.

{¶14} On April 12, 2017, the trial court held a sentencing hearing. Counts 1 through 3 merged for sentencing, and the state elected to sentence on Count 1. On Count 1, the trial court sentenced McGuire to life imprisonment with parole eligibility after 25 years. For the corresponding firearm specification, the trial court sentenced McGuire to a consecutive prison term of three years. Finally, the trial court sentenced McGuire to a prison term of 30 months on Count 4, to be served concurrently, and imposed court costs.

*State v. McGuire*, No. 105732, 2018-Ohio-1390, ¶¶ 2-14 (8th Dist. Ohio April 12, 2018).

## III. Relevant State Procedural History

### A. Indictment

McGuire was indicted on April 12, 2016, for:

4

> **Count 1:** Aggravated Murder. (R.C. 2903.01 (A).
>
> **Count 2:** Murder. (R.C. 2903.02(B).
>
> **Count 3:** Felonious Assault. (R.C. 2903.11(A)(1).
>
> **Count 4:** Having Weapons While Under Disability. (R.C. 2923.13(A)(3).

(ECF No. 7, Ex. 1). At arraignment, McGuire plead not guilty to all charges. (ECF No. 7, Ex. 2).

### B. Trial and Guilty Verdict

The case proceeded to trial by jury. The jury found McGuire guilty as charged in the indictment. (ECF No. 7, Ex. 3). On April 17, 2017, the trial court held a sentencing hearing. Upon a joint agreement, the trial court found that Counts 1 through 3 merged as allied offenses of similar import, and the state elected to sentence on Count 1. On Count 1, the trial court sentenced McGuire to life imprisonment with parole eligibility after 25 years. For the corresponding firearm specification, the trial court sentenced McGuire to a consecutive prison term of three years. Additionally, the trial court sentenced McGuire to a concurrent prison term of 30 months on Count 4. (ECF No. 7, Ex. 4).

### C. Direct Appeal

On appeal, McGuire raised one assignment of error:

> 1. The state of Ohio violated Defendant-Appellant David McGuire's right to a fair trial under the Sixth and Fourteenth Amendments of the United States Constitutions, the Ohio Constitution, and Crim. R 16 when it deliberately withheld exculpatory evidence.

(ECF No. 7, Ex. 6).

The State of Ohio filed an Appellee's brief (ECF No. 7, Ex. 7), and on April 12, 2008, the Eighth District Court of Appeals issued an opinion and judgment entry overruling McGuire's assignment of error and affirmed the judgment of the trial court. (ECF No. 7, Ex. 9).

5

### D. Appeal to the Ohio Supreme Court

On May 29, 2018, McGuire, through counsel, filed a timely notice of appeal to the Ohio Supreme Court. (ECF No. 7, Ex. 10). McGuire's memorandum in support of jurisdiction raised the following proposition of law:

> PROPOSITION OF LAW I: A trial court's remedy for a discovery violation must be sufficiently tailored to address the violation.

(ECF No. 7, Ex. 11). On August 14, 2018, the Ohio Supreme Court declined jurisdiction. (ECF No. 7, Ex. 13).

### E. Appeal to the United States Supreme Court

On November 13, 2018, McGuire, through counsel, filed a petition of writ certiorari in the Supreme Court of the United States. McGuire's petition identified the following question presented for review:

> 1. When a discovery violation is discovered mid-trial, does a remedy that fails to order the disclosure of the withheld evidence violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution?

(ECF No. 7, Ex. 14). The state filed a brief in opposition. (ECF No. 7, Ex. 15). On February 25, 2019, the United States Supreme Court denied McGuire's petition. (ECF No. 7, Ex. 16).

## IV. Federal Habeas Corpus Petition

On February 22, 2020, McGuire, through counsel, petitioned that this Court issue a writ of habeas corpus. (ECF No. 1). McGuire asserts the following ground for relief:

> **GROUND ONE:** Petitioner David McGuire's right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution was violated when the State of Ohio deliberately withheld exculpatory evidence and the trial court failed to fashion a sufficient remedy in order to protect Mr. McGuire's right under the United States Constitution.

(ECF No. 1, PageID #: 17).

6

## V. Legal Standard

### A. Timeliness of Petition

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year period of limitations for state prisoners to file their federal habeas corpus petitions. *Wall v. Kholi*, 562 U.S. 545, 550 (2011) (citing 28 U.S.C. § 2244(d)(1)); *Sexton v. Wainwright*, 968 F.3d 607, 609-10 (6th Cir. 2020), cert. denied, 141 S. Ct. 1064 (2021). There is no dispute that McGuire timely filed his federal habeas corpus petition within the 28 U.S.C. §2244(d) one-year statute of limitations. (*See* ECF No. 7 at 8).

### B. Jurisdiction

Title 28 U.S.C. § 2254(a) authorizes district courts to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a state court." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Court of Common Pleas of Cuyahoga County sentenced McGuire, and Cuyahoga County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over McGuire's § 2254 petition.

### C. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law … are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S.

62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

### D. AEDPA Standard of Review

Title 28 U.S.C. § 2254, as amended by the AEDPA, provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

8

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id*.

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's … determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of

rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet… because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id*. 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fair-minded jurists could disagree that the state courts decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id*.

## VI. Discussion

In his sole ground for relief, McGuire argues that "[his] right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution was violated when the State of Ohio deliberately withheld exculpatory evidence and the trial court failed to fashion a sufficient remedy in order to protect Mr. McGuire's rights under the United States Constitution." (ECF No. 1-1, PageID #: 17). McGuire cites *Brady v. Maryland,* 372 U.S. 83 (1963) and *Kyles v. Whitley,* 514 U.S. 419 (1995), in support of his argument.

In *Brady*, a three-prong test was created to determine whether a violation had indeed occurred. The defendant must show: (1) that the prosecutor suppressed evidence, (2) that such evidence was favorable to the defense, and (3) that the suppressed evidence was material. *See*

*Brady*, 373 U.S. at 87 The Eight District Court of Appeals wrote the following when applying precedent to the facts of this case:

> {¶21} With respect to the state's failure to turn over information regarding the Bolton investigation, we agree with the state that this did not amount to a *Brady* violation.
>
> {¶22} As noted above, *Brady* material can be either exculpatory to the defendant or impeachment material related to a government witness. Crim.R. 16(B)(2) provides that upon receipt of a written demand for discovery by the defendant, the state shall provide criminal records of the defendant, a codefendant, and the record of prior convictions that could be admissible under Rule 609 of the Ohio Rules of Evidence of a witness in the state's case-in-chief, or that it reasonably anticipates calling as a witness in rebuttal. The Supreme Court has held that "when the reliability of a given witness may well be determinative of guilt or innocence," nondisclosure of evidence affecting credibility falls within the general rule enunciated in *Brady*. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), citing *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).
>
> {¶23} McGuire asserts that the state's failure to disclose information related to the Bolton investigation violated its duty under *Brady* and *Giglio* to turn over impeachment evidence.
>
> {¶24} We first note that *Brady* does not apply here because the information that the state was alleged to have suppressed — the fact that Bolton was being investigated for misconduct — was publicly available. "*Brady* does not apply to materials that are not 'wholly within the control of the prosecution.'" *United States v. Delgado*, 350 F.3d 520, 527 (6th Cir.2003), quoting *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir.1998). There is no need to require the state to "disclose" material that is readily available to the defense. Indeed, defense counsel learned of the Bolton investigation by conducting a Google search during trial.
>
> {¶25} Further, to the extent that McGuire's argument here rests on not only the existence of the Bolton investigation but specific details acquired by the state in the course of the investigation, this is still insufficient to create a *Brady* violation. It is important to note that the state never called Bolton as a witness. This is critical, as the obligation set forth in *Giglio* relates to impeachment evidence. It is impossible to impeach an individual who does not testify as a witness. While we acknowledge that the state included Officer

11

> Bolton on its initial witness list provided to the defense, he was ultimately not called as a witness. For these reasons, this does not amount to a *Brady* violation.
>
> {¶26} Whether suppressed evidence is favorable "turns on the cumulative effect of all suppressed evidence favorable to the defense, not on the evidence considered item by item." *State v. Apanovitch*, 107 Ohio App.3d 82, 92, 667 N.E.2d 1041 (8th Dist.1995). However, because we find that the Bolton investigation was not *Brady* evidence, we decline to consider the cumulative effect of the investigation and the body camera evidence.

*McGuire*, 2018-Ohio-1390, ¶¶ 21-26.

Respondent argues that no *Brady* violation occurred during McGuire's trial. (ECF No. 7). This Court agrees.

*Brady* "is concerned only with cases in which the government possesses information which the defendant does not, and the government's failure to disclose the information deprives the defendant of a fair trial." *United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994). There is no *Brady* violation where the defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information or where the evidence is available to the defendant from another source. *United States v. Clark,* 928 F.2d 733, 738 (6th Cir. 1991). Here, as the state appellate court noted, the information regarding the Bolton investigation was information that was publicly available, and the defendant, indeed, discovered information regarding the Bolton investigation during his own internet research. (ECF No. 3 at 13). As such, evidence in this case does not support a *Brady* violation, specifically regarding the Bolton investigation.

The undersigned notes, however, the state appellate court appears to have erroneously concluded that *Giglio* had no application when the related witness does not testify at trial. *See United States v. Jackson*, 345 F.3d 59, 70 (2d Cir. 2003) ("The fact that Redman did not testify at

12

the defendants' trial presents no obstacle to application of *Brady* and its progeny.") However, even if this Court were to assume that the state had disclosure obligations despite the public nature of the investigation *and* that Bolton's failure to testify did not eliminate those obligations, McGuire's claim would still fail.

McGuire's *Brady* claim fails to satisfy the third component of the Supreme Court's test for a *Brady* violation. This component requires a court to ask "whether petitioner has established the prejudice necessary to satisfy the 'materiality' inquiry." *Strickler v. Greene*, 527 U.S. 263, 282 (1999). The "touchstone of materiality is a 'reasonable probability' of a different result." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). This is not a test for sufficiency of evidence; the petitioner must show that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id*. at 434-35. A court looks at "the cumulative effect of suppression" in light of the evidence as a whole. *Id*. at 436-37.

Herein, McGuire offered no argument surrounding the materiality of the materials related to the unrelated investigation of Bolton. While McGuire posits in his briefing that Bolton made several missteps during the handling of the crime scene, McGuire never sought to call Bolton as a witness. Moreover, to the extent that McGuire suggests that undermining Bolton's credibility was the key to a self-defense theory, McGuire never pursued such a theory. As such, there is nothing in the record to support a finding that attacking Bolton's credibility was even relevant to McGuire's defense. As such, McGuire falls well short of demonstrating that any withheld information regarding Bolton was material.

Additionally, McGuire argues his due process rights were violated by the state's failure to turn over the body camera footage from the responding offers. Similar to his claim regarding the documents surrounding Bolton's investigation, McGuire argues that the body camera footage was

13

crucial to his defense and could have supported a theory of self-defense. The Eight District Court of Appeals wrote the following when applying precedent to the facts of this case:

> {¶28} Applying the *Brady* analysis laid out above, McGuire's claim here fails. Courts have consistently rejected *Brady* claims that are too speculative, requiring defendants to substantiate claims that the evidence in question was favorable and material. See *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, *State v. Hughes*, 8th Dist. Cuyahoga No. 62884, 1993 Ohio App. LEXIS 5277 (Nov. 4, 1993).
>
> {¶29} Not only is McGuire's assertion that the body camera evidence might have supported a claim of self-defense speculative, it also ignores other evidence in the record that would refute such a theory — specifically, the location of the bullet wounds and the path of the bullets through Mac's body. The bullets entered Mac's body through the back of his thighs and pelvis and traveled up and across his body, with one bullet reaching his liver and another piercing his lung. The medical examiner explained in his testimony that this was consistent with the victim laying down in the vehicle with his legs up in a defensive posture. Such a position is also consistent with the eyewitness testimony of Sultan Muhammad.
>
> {¶30} Finally, McGuire made statements to the police from the time of his arrest and through trial that he did not possess a gun and was not at the crime scene when Mac was shot. Therefore, even if body camera evidence existed that supported a self-defense theory of the case, McGuire is unable to show how he was prejudiced by this alleged *Brady* violation.
>
> {¶31} Although McGuire's claim fails under the three-prong test discussed above, we note that this case is different than a traditional *Brady* case because the body camera footage did not exist at the time of trial. The state argues that it "cannot be faulted for failing to disclose evidence it did not have." *State v. McClurkin*, 10th Dist. Franklin No. 08AP-781, 2009-Ohio-4545, ¶ 57. This statement is generally accurate, but it does not account for cases in which the state loses, destroys, or otherwise fails to preserve evidence. The state argues that there is no evidence suggesting that the state ever possessed body camera footage from Officers Bolton and Williams from March 16, 2016. While the record contains no evidence that the prosecutor ever possessed body camera evidence, the same cannot be said of the East Cleveland Police Department.

{¶32} The record shows that the parties stipulated that "a thorough search was made on March 30, 2017 for body camera video of Bolton and Williams from March 16th or even the 17th, and none can be located." There is also evidence in the record, put forth by the state's witnesses, that at least one of the two responding officers was wearing his body camera on March 16, had his camera on, and subsequently followed department procedures for downloading the footage. We agree with the state that "'materials not possessed by the government cannot be suppressed within the meaning of *Brady*.'" *McClurkin*, quoting *State v. Zirkle*, 4th Dist. Meigs No. 95 CA 21, 1997 Ohio App. LEXIS 4173, 11 (Aug. 27, 1997). However, this case is distinguishable from the cases cited by the state, where the evidence in question never existed or was never in the government's possession. In cases where the evidence was at some point in the possession and control of the government, but is no longer available, we must apply a different analysis.

{¶33} "[W]hen potentially exculpatory evidence requested by a defendant is permanently lost, 'courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed.'" *State v. Mapp*, 3d Dist. Union No. 14-10-34, 2011-Ohio-4468, ¶ 25, citing *California v. Trombetta*, 467 U.S. 479, 486, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). In light of this difficulty, a different analysis is required when dealing with the state's failure to preserve evidence of an uncertain exculpatory value, "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 9. "Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

{¶34} The defendant bears the burden of showing that the government acted in bad faith. *Geeslin* at ¶ 14. "'The term "bad faith" generally implies something more than bad judgment or negligence.'" *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 81, quoting *State v. Tate*, 5th Dist. Fairfield No. 07 CA 55, 2008-Ohio-3759, ¶ 13. "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking the nature of fraud." Id. at ¶ 81, quoting *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 6 Ohio B. 337, 452 N.E.2d 1315 (1983).

{¶35} Here, McGuire alleges that Bolton somehow corrupted the investigation of his case. In support of this allegation, McGuire

> relies on Bolton's unrelated criminal case. A reference to an unrelated incident is insufficient to establish that the state acted in bad faith in failing to preserve the body camera evidence. Based on the East Cleveland Police Department policy articulated on the record at trial, we know that the failure to preserve the body camera evidence constitutes a breach of a known duty. We cannot, however, conclude that it was done through some ulterior motive or ill will as required for a finding of bad faith. There is nothing in the record indicating bad faith as alleged by McGuire. In fact, the record reveals a thorough, though ultimately fruitless, effort by the prosecutor to procure body camera evidence.

*McGuire*, 2018-Ohio-1390, ¶¶ 28-35.

Respondent argues the state appellate court reasonably determined that this is not a case where substantial withheld evidence indicated that another person, not the defendant, was in fact the guilty party. Respondent additionally argues that the state appellate court reasonably concluded that the allegedly suppressed body camera evidence does not so undermine the confidence in the verdict as to be "material" within the meaning of *Brady* and *Youngblood/Trombetta*. This is so, according to the Respondent, because when considering the location of the bullet wounds, the path they took through the victim's body, and Sultan Muhammad's testimony, no viable self-defense theory could have been presented.

This Court agrees that the state court was not unreasonable when it found that the bodycam footage was not material. Although McGuire posits that the footage *could* have supported a claim for self-defense, his claim – even now in this action – is wholly speculative. As noted above, there is nothing in the record to suggest that McGuire ever held a legitimate self-defense claim. Both eyewitness testimony of the incident and medical testimony regarding the decedent's injuries and the path the bullets took through his body were offered in support of the State's case. That evidence directly refuted any claim of self-defense. Moreover, given that the officer did not arrive on the scene until well after the shooting occurred, it is difficult to conceive of how the camera footage

16

could have aided a claim of self-defense. Such footage, by its nature, could not have refuted the eyewitness's testimony or the medical testimony. Here, any claim that the footage could have supported a theory of self-defense is wholly speculative.[2]

Thus, the state court's decision was not contrary to or an unreasonable application of clearly established federal law.

Accordingly, McGuire's sole ground for relief should be DENIED.

## VII. Certificate of Appealability

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Here, if the Court accepts the foregoing recommendation, then McGuire has not made a substantial showing of a denial of a constitutional right. He then would not be entitled to a certificate of appealability. Thus, I recommend the Court not issues a certificate of appealability.

## VIII. Recommendation

---

[2] Although the undersigned need not reach the issue because the camera footage was not material, I also find that the state court was not unreasonable when it concluded that there was no evidence of bad faith in the failure of the state to preserve the footage. Although McGuire seeks to paint Bolton as a rogue officer bent on obtaining convictions at all costs, he has failed to substantiate such claims with any record evidence.

In light of the reasoning set forth above, the I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

DATED: December 21, 2022

                                              *s/Carmen E. Henderson*
                                              **Carmen E. Henderson**
                                              **United States Magistrate Judge**

_____

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).