UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID McGUIRE, | ) | CASE NO. 1:20-cv-00415 |
| Petitioner, | ) ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) ) | |
| LYNEAL WAINWRIGHT, WARDEN, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Respondent. | ) ) | |

Before this Court is the Report and Recommendation ("R&R") of Magistrate Judge Carmen E. Henderson (Doc. No. 9) recommending that the Court deny Petitioner David McGuire's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and dismiss the claims therein. (Doc. No. 9.) Petitioner filed an objection to the R&R on January 4, 2023. (Doc. No. 10.) Respondent Warden Lyneal Wainwright responded to Petitioner's objections on January 18, 2023. (Doc. No. 11.) For the reasons that follow, the R&R is ACCEPTED, and the petition for writ of habeas corpus is DENIED in its entirety.

I. **Background**[1]

On March 16, 2016, Petitioner walked up to his third-floor apartment, grabbed a gun, walked downstairs to a car backed into the apartment's driveway, and fired four shots into his cousin, who was sitting in the vehicle's passenger seat. *State v. McGuire*, 2018-Ohio-1390, 2018

---

[1] Petitioner did not raise any specific objections to the factual or procedural background outlined in the R&R. The Court, therefore, provides only a high-level summary of the facts and procedural history relevant to resolving Petitioner's objections.

WL 1778588, at *1 (Ohio Ct. App. 2018). Petitioner fled the scene. *Id.* Petitioner's cousin died from the gunshots. *Id.*

Petitioner's neighbor witnessed the shooting from the second floor of Petitioner's apartment. *Id.* The neighbor instructed his girlfriend to call 911. *Id.* East Cleveland Police Officer Kenneth Bolton was the first to arrive on scene. *Id.* Officer Elshawn Williams, also of the East Cleveland Police Department, arrived shortly after. *Id.* The officers spoke with Petitioner's neighbor and the neighbor's girlfriend. *Id.* They also interviewed another neighbor, who heard gunshots and saw Petitioner near the car with his hands on his head after the shots were fired. *Id.*

On April 12, 2016, a grand jury issued a four-count indictment, charging Petitioner with aggravated murder, murder, felonious assault, and having weapons under disability. *Id.* He pled not guilty on all counts, and the case proceeded to trial. *Id.* Petitioner's defense at trial was that he was acting in self-defense. (Doc. No. 1-3 at PageID 30.)

Officer Williams testified at trial. *McGuire*, 2018 WL 1778588, at *1. Officer Bolton did not. *Id.* at *3. Officer Williams testified to wearing a body camera when he responded to the scene. *Id.* at *1. He further testified that such footage was downloaded by a supervisor after every shift, including on March 16, 2016. (Trial Transcripts Vol. I, Doc. No. 7-2 at PageID 704-05.) Petitioner raised moving for a mistrial based on the prosecution's failure to produce the body camera footage before trial. *Id.* The state responded that it could not locate any body camera footage, despite uncontroverted testimony establishing that Officers Bolton and Williams were both wearing body cameras when they arrived on scene. *Id.* The court declined to rule on the motion for mistrial until a complete record was developed. *McGuire*, 2018 WL 1778588, at *1.

2

Petitioner's counsel discovered that Officer Bolton was under investigation for an alleged on-duty sexual assault during a traffic stop. *Id.* (Trial Transcripts Vol. II, Doc. No. 7-3 at PageID 1014-015.) Officer Bolton had his body camera turned off during that traffic stop. (Doc. No. 7-3 at PageID 1029-30.) Two weeks after the verdict was reached in Petitioner's case, Officer Bolton was charged with two counts of gross sexual imposition, two counts of abduction, and two counts of interfering with civil rights. *State v. Kenneth Bolton*, Cuyahoga County Court of Common Pleas, Case No. CR-17-616289.

After learning of this investigation, Petitioner moved for another mistrial, this time premised on the state's failure to turn over Officer Bolton's investigation records (the "Bolton File") as well as the body camera footage from Officers Bolton and Williams. *McGuire*, 2018 WL 1778588, at *1. The court denied the motion as it related to the Bolton File but imposed a "sanction in the form of allowing defense counsel wide latitude in its cross-examination of Detective Harvey," the lead detective in the case. *Id.* at *2. The court, again, declined to rule on anything regarding the body camera footage until the record was a more fully developed. *Id.*

At a later point in trial and after discussing the matter at length with Petitioner, Petitioner's counsel stated that Petitioner would not be making another motion for a mistrial based on the state's failure to turn over body camera footage. *Id.* Instead, Petitioner moved for a sanction in the form of a jury instruction. *Id.* Ultimately, the court instructed the jury as follows:

> You have also heard evidence that two East Cleveland Police officers who arrived first at the crime scene used body worn cameras. The East Cleveland Police Department was required to preserve the images and audio from those cameras. The State of Ohio was obligated to provide all of those recordings to counsel for the defendant. Those obligations were not met. You may consider these failures and draw any reasonable inference from them when deciding whether the State of Ohio has proved the charges beyond a reasonable doubt.

*Id.*

The jury returned guilty verdicts on all counts. *Id.* Petitioner raised one assignment of error on direct appeal:

> The State of Ohio violated Defendant-Appellant David McGuire's right to a fair trial under the Sixth and Fourteenth Amendments of the United States Constitutions, the Ohio Constitution, and Crim. R. 16 when it deliberately withheld exculpatory evidence.

(Doc. No. 7-1 at PageID 101.) The Ohio Eighth District Court of Appeals overruled Petitioner's assignment of error and affirmed the trial court's judgment. *McGuire*, 2018 WL 1778588, at *5. The Ohio Supreme Court declined to exercise jurisdiction over Petitioner's appeal. (Doc. No. 7-1 at PageID 202.) The United States Supreme Court denied Petitioner's writ of certiorari. (*Id.* at PageID 251.)

On February 22, 2020, Petitioner filed his writ of habeas corpus asserting the following ground for relief:

> **GROUND ONE**: Petitioner David McGuire's right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution was violated when the State of Ohio deliberately withheld exculpatory evidence and the trial court failed to fashion a sufficient remedy in order to protect Mr. McGuire's right under the United States Constitution.

(Doc. No. 1 at PageID 17.)

The Magistrate Judge recommended that the Court deny the requested relief because Petitioner failed to demonstrate that either of the two pieces of evidence about which he complains – the Bolton File or the body camera footage – were material to his defense. (*Id.* at PageID 1375, 1378.) Thus, Petitioner did not establish a violation of his constitutional right to a fair trial.

Petitioner objected to the R&R and argued that it (1) erroneously applied *Brady*'s materiality standard and (2) did not address his argument that the trial court failed to fashion a sufficient remedy for the state's *Brady* violations. (Doc. No. 10 at PageID 1389-392). Arguably,

4

Petitioner has waived his right to *de novo* review on his first challenge, as he mostly rehashed arguments advanced in his petition and traverse, rather than identifying the portions of the proposed findings, recommendations, or report to which he was objecting. *Aldrich*, 327 F.Supp.2d at 747. Because Petitioner stated some specific criticisms regarding the Magistrate Judge's materiality analysis concerning the Bolton File, and because his second challenge requires the Court to evaluate whether there were any *Brady* violations, the Court reviews the entire R&R *de novo*.

## II. Law and Analysis

### A. Legal Standard

When objections are made to a magistrate judge's report and recommendation on a dispositive natter, the district court must conduct a *de novo* review of the portions of the report and recommendation to which a proper objection is made. 28 U.S.C. § 636(b)(1)(C). Thereafter, the district judge "may accept, reject, or modify the recommended decision; receive further evidence; or recommit the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.

A general objection – that is, "[a]n 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before" – is not considered a proper objection for the district court's *de novo* review. *Woodson v. Ohio*, 2022 WL 842240, at *1 (N.D. Ohio Mar. 22, 2022) (quoting *Aldrich v. Bock*, 327 F.Supp.2d 743, 747 (E.D. Mich. 2004)); *see also* LR 72.3(b) (stating that any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such

objections"). A general objection to an R&R has the same effect as a failure to object in that it waives *de novo* review by the district court and any later appellate review of the district court's decision. *Aldrich*, 327 F.Supp.2d at 747-48.

The Court's *de novo* review in this instance is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "The writ of habeas corpus is an 'extraordinary remedy' that guards only against 'extreme malfunctions in the state criminal justice system.'" *Shinn v. Ramirez*, 142 S. Ct. 1718, 1731 (2022) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-103 (2011)).

### B. Discussion

#### 1. The fact of Officer Bolton's separate criminal investigation, as well as the nature of that investigation, was publicly available.

Petitioner mainly objects to the Magistrate Judge's conclusion that the state's failure to turn over the Bolton File was not a *Brady* violation. In asserting this argument – aside from stating that the file itself was not publicly available – Petitioner does not adequately dispute the R&R's determination that the information surrounding the Bolton File was publicly available during Petitioner's trial. (Doc. No. 9 at PageID 1374.) Notably, the Magistrate Judge correctly

6

pointed out – and Petitioner does not dispute – that defense counsel discovered the investigation "during his own internet research."[2] (Doc. No. 9 at PageID 1374.)

Although the Bolton File was not made available, *Brady* does not apply "where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information." *United States v. Castano*, 906 F.3d 458, 466 (6th Cir. 2018) (quotations omitted); *see also United States v. Cottage*, 307 F.3d 494, 500 (6th Cir. 2002).

By Petitioner's own acknowledgment, the record below demonstrates his knowledge of these essential facts during trial. He knew that Officer Bolton was under investigation for committing sexual assault while on duty. Petitioner also knew that Officer Bolton was then alleged to have intentionally turned off his camera while committing this crime. (Doc. No. 7-3 at PageID 1014-015, 1029-030.) Because these facts were undisputedly available to Petitioner during trial, he cannot show that the state prejudiced him by refusing to disclose the investigative file itself. Thus, Petitioner has not shown there to be a violation under *Brady*.

### 2. Petitioner must show prejudice under *Brady*.

Petitioner argued that the Magistrate Judge erroneously required him to prove that the Bolton File was material to his defense at trial. (Doc. No. 10 at PageID 1389.) To Petitioner, this is "not a standard *Brady* case" because the investigative file directly relates to uncovering the prejudice caused by the state's failure to hand over the body camera footage. (*Id.* at PageID 1390.) By being denied access to both, he claimed he was denied a fair trial. (*See id.*)

To qualify for habeas relief, Petitioner must show that, at trial, there was a ruling "contrary to" or an "unreasonable application of" clearly established law as determined by the

---

[2] In fact, Petitioner's trial counsel discovered the investigation after doing a mere "quick Google name search." (Doc. No. 7-3 at PageID 1013.)

7

Supreme Court. 28 U.S.C. § 2254(d)(1). Petitioner here rests on the allegation that a *Brady* violation occurred.

"[T]he prosecution in a criminal case has a constitutional duty to disclose material, exculpatory evidence." *McNeill v. Bagley*, 10 F.4th 588, 598 (6th Cir. 2021) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). To establish a *Brady* violation, a reviewing court must conclude the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; the evidence was suppressed by the state, either willfully or inadvertently; and prejudice ensued. *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (quotations omitted) (federal habeas corpus relief denied and *Brady* found not to have been violated because the accused could not show that the proven withholding of exculpatory evidence caused prejudice.)

> The prejudice prong is sometimes referred to as the materiality requirement. Evidence is material (and so shows prejudice) if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. In order to demonstrate reasonable probability, the petitioner must sufficiently undermine confidence in the outcome of the trial. We evaluate the evidence as a whole, rather than on an individual basis, in order to determine whether it was material.

*McNeill*, 10 F.4th at 598 (cleaned up).

Petitioner argues that the Magistrate Judge's attention to the materiality of the withheld, exculpatory evidence was erroneous because this is not, to his mind, a "standard *Brady* case." The R&R should have considered the cumulative effect of the state's withholding of the Bolton File and body camera footage or, essentially, disregarded materiality all together, he argues.

All the allegedly withheld evidence was evaluated in the R&R. To the extent Petitioner is not clear as to whether it was evaluated as a "whole," this Court has evaluated it "as a whole, rather than on an individual basis." *Id.* Even so, Petitioner has not demonstrated prejudice. And to the extent that Petitioner believes an alleged "non-standard *Brady* case," like this, does not

8

require proof of prejudice, his belief is contrary to clearly established Supreme Court precedent. *E.g.*, *id.*

### 3. Petitioner cannot show prejudice under *Brady*.

As stated above, materiality, and with it prejudice, is determined by whether there is a "reasonable probability" of a different result if the evidence was disclosed. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). To show this, the petitioner must establish that the "favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435. In determining whether this burden is met, courts must look at the "cumulative effect of the suppression" of all evidence. *Id.* at 436-37.

The central argument advanced in Petitioner's briefs is that the Bolton File would have afforded him an opportunity to investigate and, perhaps, uncover exculpatory evidence that would have established prejudice that resulted from the state's failure to disclose the officers' body camera footage. (Doc. No. 10 at PageID 1390.) In making this argument, Petitioner speculated that the officers' body camera footage from the day of the murder would have shown that the position of the victim's body and the existence of a gun in the car supported his claim of self-defense. (*Id.* at PageID 1383.) Petitioner then built off this speculation by implying that the Bolton File would have unlocked his ability to prove that the body camera footage was not disclosed because it contained such exculpatory footage. (*See id.*; *see also* Doc. No. 1-3 at PageID 32-3.) Consequently, based on Petitioner's arguments, the investigative file's materiality is directly related to the body camera footage's potential exculpatory value.

The appellate court and the Magistrate Judge correctly determined that the body camera footage was immaterial. Petitioner's theory at trial was that he acted in self-defense. (Doc. No. 1-3 at PageID 30.) The body camera footage could not have significantly aided this defense

9

because, at trial, the unrefuted testimony of the medical examiner – bolstered by the neighbors' eyewitness testimony – established that the bullet wound locations were consistent "with the victim laying down in the vehicle with his legs up in a defensive posture." *McGuire*, 2018 WL 1778588, at *4. Put another way, no matter how damaging the information in it would have been, the Bolton File would not have undermined the overwhelming inculpatory evidence the victim was shot while laying down and in a defensive position. For example, even if the Bolton File suggested that Officer Bolton manipulated crime scenes, it still would not cast doubt on the eyewitness testimony and medical reports indicating that Petitioner's sole defense at trial was baseless. Thus, the failure to hand over the Bolton File or the body camera footage does not put the whole case "in such a different light as to undermine confidence in the verdict." *See Kyles*, 514 U.S. at 434-35.

Petitioner's argument that he was denied a fair trial is also undercut by the fact that Officer Bolton was never called as a witness at trial, and Petitioner voluntarily withdrew his motion for a mistrial. *McGuire*, 2018 WL 1778588, at *2-3. Add to these points the fact that the trial court's adverse jury instruction explicitly allowed for an adverse inference due to the state's failure to produce the footage, and the record below reflects that Petitioner was, in fact, afforded the opportunity to incorporate the absence of body camera footage in his assertion of self-defense. *Id.* at *2.

### 4. An alleged inadequate sanction for a discovery violation sanction is not a basis for habeas relief.

Petitioner also objected to the R&R's failure to address his argument that the trial court judge did not craft a sufficient remedy for the state's discovery violations. (Doc. No. 10 at 1391.) This argument is also not well-taken. This Court's limited authority on habeas review is whether any of the trial court's rulings implicated "clearly established Federal law[] as

10

determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As stated above, Petitioner has not met his burden of showing the trial court either ruled contrary to or misapplied clearly established federal law. The Court, therefore, cannot review whether the trial court's discovery violation remedies – wide-ranging cross-examination of the key detective and an adverse jury instruction – were inadequate. *See State v. Darmond*, 986 N.E.2d 971, 976 (Ohio 2013) ("Sanctions for a Crim. R. 16 discovery violation are within the discretion of the trial court and should be imposed equally, without regard to the status of the offending party."); *Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one.").

### 5. Both the appellate court and the Magistrate Judge correctly determined that Petitioner did not establish a *Youngblood* violation.

The appellate court also found that Petitioner did not provide sufficient evidence to establish that the state acted in "bad faith" by failing to preserve officer Bolton's and Williams' body camera footage under *Arizona v. Youngblood*, 488 U.S. 51 (1998). *McGuire*, 2018 WL 1778588, at *5. Similarly, the R&R stated in a footnote that there was no record evidence that the state acted in bad faith. (Doc. No. 9 at PageID 1379 n.2.) Petitioner did not offer any objections to these conclusions in his petition, traverse, or objection, so *de novo* review on this issue is not required. Nonetheless, the Court finds that Officer Bolton's act of *turning off* his camera in a separate instance does not create a reasonable inference of bad faith where the issue is the state's *failure to retain* the footage from *both* Bolton and Williams. To find otherwise, the Court would have to conclude that there is sufficient evidence that the state knew that both officer's footage was exculpatory at the time they were destroyed. *United States v. Jobson*, 102

11

F.3d 214, 218 (6th Cir. 1996) ("The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." (quoting *Youngblood*, 488 U.S. at 56)).  No such evidence is in the record.

### III.  Conclusion

Petitioner's objections are hereby overruled.  The R&R is hereby ACCEPTED, and the petition is hereby DENIED.  The Court certifies that there is no basis on which to issue a certificate of appealability.  28 U.S.C. § 2253; Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

**Date**: March 10, 2023